**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

*Attorneys for Plaintiff and the putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUN VIRGINIA SUN-DAMPIER**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**HILL'S PET NUTRITION, INC.**, a Delaware corporation, and **DOES 1-10**, inclusive,<br><br>        Defendants. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of the California Consumer Legal Remedies Act**<br>2. **Violation of the California False Advertising Law**<br>3. **Breach of Express Warranty**<br>4. **Breach of Implied Warranty of Merchantability**<br>5. **Negligent Misrepresentation**<br>6. **Negligence**<br>7. **Violation of the California Unfair Competition Law; and**<br>8. **Unjust Enrichment**<br><br>**JURY TRIAL DEMANDED** |

**Class Action Complaint**

Plaintiff Jun Virginia Sun-Dampier ("Plaintiff") alleges the following against Defendants HILL'S PET NUTRITION, INC. ("Defendant") and DOES 1-10, inclusive, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this Class Action on behalf of herself and all persons in California who purchased Hill's Prescription Diet and Hill's Science Diet brand dog food with dangerously elevated levels of vitamin D (hereinafter the "Products"). Defendant has publicly admitted that "select canned food products" under these brand names contained elevated levels of vitamin D, and that "the affected canned dog foods were distributed through retail pet stores and veterinary clinics nationwide."

2.      Ingesting excessive amounts of vitamin D can be dangerous and even lethal for dogs. Defendant recognized this fact its recall of select Products, stating that "elevated levels of vitamin D" can cause symptoms such as "vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss," and can lead to "serious health issues in dogs including renal dysfunction and failure and death."

3.      Numerous customers have reported that soon after eating the Products their otherwise healthy dogs became sick and/or died. Plaintiff is one such customer: shortly after her dog Garfield ate certain Products, he became seriously ill—exhibiting symptoms consistent with ingesting elevated levels of vitamin D—and unexpectedly died.

4.      Not only has Defendant sold the toxic Products, Defendant unreasonably delayed issuing a recall despite the fact that it both knew and should have known that the Products contained toxic levels of vitamin D long before it issued the recall.

5.      Accordingly, Plaintiff brings this class action on behalf of herself and all other similarly situated consumers seeking monetary relief and an order forcing Defendant to provide appropriate injunctive relief by identifying all Products that potentially have elevated levels of vitamin D through comprehensive testing, ensuring that all potentially affected Products are identified on Defendant's website, and removing all of the potentially affected Products from the stream of commerce.

//

**PARTIES**

6.      Plaintiff is and at all material times was a citizen and resident of Alameda County, California. Plaintiff purchased what she believes to be the Products at issue at PetSmart in Fremont, California.

7.      Defendant is a Delaware corporation with its principal place of business at 400 SW 8th Street, Topeka, Kansas 66603. Defendant manufactures, markets, advertises, labels, distributes, and sells pet food under the brand names Hill's Prescription Diet and Hill's Science Diet, among others, throughout the United States, including in this District. Defendant is a subsidiary of Colgate-Palmolive Company.

8.      DOES 1 through 10 inclusive are now and/or at all times mentioned in this Complaint were licensed to do business and/or actually doing business in the State of California. Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of DOES 1 through 10, inclusive and for that reason, DOES 1 through 10 are sued under such fictitious names. Plaintiff will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

**JURISDICTION AND VENUE**

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because at least one member of the putative Class is a citizen of a State other than that of the Defendant, there are more than 100 Class members, and the damages suffered and sought to be recovered herein total, in the aggregate, in excess of $5,000,000, exclusive of interests and costs.

10.      Personal jurisdiction is proper as Defendant has purposefully availed itself of the privilege of conducting business activities within this District.

11.      Venue is proper under 28 U.S.C. § 1391 because Defendant, at all material times, has had continuous and systematic contacts in this District by actively doing business and perpetuating the deceptive business practices that are the subject of this lawsuit in this District. In addition, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

//

# FACTS

**Common Factual Background**

12.     Defendant has created a niche in the pet food market by marketing its pet food, including the Products, as "driven by science." It accomplishes this through its product names such as "Science Diet" and "Prescription Diet," as well as making representations such as: "our decades of science and research guide us in making food with the precise blend of taste and nutrition your pet needs — so they can live their best life," "Every transformation starts with science," "Groundbreaking nutrition that can transform the lives of pets and comfort the pet parents and vets who care for them," and "A perfect balance of natural* ingredients to enhance the lives of your pet and your family." Defendant then charges a premium for this purportedly higher-quality, specialized food.

13.     On its Product labels, Defendant emphasizes this purportedly scientific focus of its food, representing that its Prescription Diet Products are "Veterinary Exclusive" and that it contains "Clinical Nutrition." It represents that its Science Diet Products are "Veterinarian Recommended."

14.     On Defendant's website, under the "Product Details" section for the Products, Defendant represents that the Products contain "Clinically proven nutrition that can transform your pet's life" and "High quality protein and thoughtfully sourced ingredients."

15.     Defendant also strongly emphasizes the safety of its pet food, by, *inter alia*:

    a.  Touting "Safety standards you can trust. Our quality and safety standards are so rigorous, they're modeled after human food manufacturers — so your pet gets a food made with their best interest in mind."

    b.  Representing that it has a "proven commitment to quality and safety."

    c.  Claims that it "only accept[s] ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's."

    d.  Claims that it examines each ingredient "to ensure its safety."

    e.  Represents that it "conduct[s] annual quality systems audits for all manufacturing facilities to ensure [they] meet the high standards your pet

**Class Action Complaint**

deserves" and "final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food."

 f. Represents that "all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

16. The Product labels also state variations of the following statement: "Animal feeding tests using AAFCO procedures substantiate that [the Product] provides complete and balanced nutrition for maintenance of adult dogs."

17. Based on Defendant's various affirmations of fact and purportedly "clinically proven" effectiveness, consumers across the country pay a premium for the Products, believing they are tailored to the specific needs of their dogs and safe for pet consumption.

18. Additionally, based on Defendant's representations and affirmations of fact set forth above, veterinarians prescribe Hill's Prescription Diet Products to dog owners who need specialty food.

19. However, the Products were not safe, as they had dangerously elevated levels of vitamin D that have proven to be toxic and even lethal.

20. Excessive vitamin D poses substantial and unreasonable risks to dogs. As set forth above, Defendant itself recognized in recalling a subset of its Products, "elevated levels of vitamin D" can cause symptoms such as "vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss," and can lead to "serious health issues in dogs including renal dysfunction and failure and death.[1]

21. As early as February 2018, dog owners complained to Defendant that the Products were causing their pets to develop symptoms consistent with vitamin D poisoning.[2] Moreover, in the past month, consumers have made at least hundreds of online complaints in various forums,

---

[1] https://www.hillspet.com/productlist (last visited February 13, 2019)
[2] https://www.nbcchicago.com/news/national-international/Pet-Owners-Say-Their-Dogs-Are-Sick-Dying-After-Eating-Recalled-Hills-Pet-Nutrition-Dog-Food-05379451.html?_osource=SocialFlowFB_CHBrand&fbclid=IwAR1YE1ZUss2ZVHkMlzlwfqLHC9a-saet-TckbfEDEghbUj3mckLYzN (last visited February 13, 2019)

**Class Action Complaint**

including on Defendant's public Facebook page, about their dogs becoming ill and/or dying after eating the Products. The complaints state that the dogs show consistent symptoms, including vomiting, loss of appetite, increased thirst, increased urination, weight loss, and renal dysfunction. On information and belief, these illnesses and deaths were caused by excessive levels of vitamin D in the Products.

22.     On December 3, 2018, the FDA issued a press release warning pet owners about potentially toxic levels of vitamin D in several brands of pet food, and noting that it was working with a common contract manufacturer of pet food to provide a comprehensive list of affected brands.[3] Yet despite this warning, Defendant did not issue a recall, and continued to manufacture and sell the Products with toxic levels of vitamin D for months afterward.

23.     Further, as set forth above, Defendant also claims to have rigorous inspection and quality assurance protocols in place, processes that did or should have alerted it to the toxic levels of vitamin D in its raw materials.

24.     Additionally, not only does Defendant claim to subject its suppliers, raw materials and finished products to extensive and repeated quality testing and inspections, but vitamin D toxicity was a known risk much earlier than January 31, 2019, when Defendant first announced its recall. Indeed, as the December 3, 2018 FDA notice indicated, several other brands of dog food were recalled due to toxic levels of vitamin D found in those products, and dogs eating Defendant's Products reportedly became ill and died of vitamin D toxicity well before that.

25.     Despite laws governing pet foods and providing government oversight, the FDA notes that "[p]et food manufacturers are responsible for taking appropriate steps to ensure that the food they produce is safe for consumption and properly labeled" including "verify[ing] the identity and safety of the ingredients they receive from suppliers."[4]

26.     Although Defendant issued a voluntary recall on January 31, 2019, in which it represented that it "confirmed to be the only affected products in this voluntary canned dog food

---

[3] https://www.fda.gov/AnimalVeterinary/NewsEvents/ucm627485.htm (last accessed February 13, 2019)
[4] https://www.fda.gov/AnimalVeterinary/SafetyHealth/ProductSafetyInformation/ucm544348 (last visited February 13, 2019)

recall[],” it has already expanded the list of the purportedly limited Products.[5] Additionally, there are complaints online from customers whose pets are experiencing symptoms of vitamin D toxicity despite eating Products other than the limited Products identified by Defendant. Therefore, upon information and belief, Defendant's list of affected Products is incomplete.

27.    Many consumers have incurred substantial expenses as a result of purchasing the Products, including the cost of the Products, veterinary bills, and, as with Plaintiff, costs associated with cremation and burial of their dogs.

**Plaintiff's Experience**

28.    Plaintiff owned a Pekingese dog named Garfield, pictured below:



29.    Because Garfield had Bloat, Plaintiff's veterinarian recommended Hill's Prescription Diet dog food to help Garfield with his condition. Plaintiff decided to feed Garfield the Products after discussing the quality of the Prescription Diet food with the veterinarian and reviewing the information reflected on the Product labeling.

30.    Garfield's Bloat was not severe, and had been eating specialty food, including Hill's Prescription Diet, for years without any issues prior to 2018.

31.    On September 25, 2018, Plaintiff purchased $61.02 worth of Hill's Prescription Diet i/d Digestive Care Dog Food - Chicken & Vegetable Stew, and fed it to Garfield.

32.    On December 4, 2018, Plaintiff purchased $75.36 worth of Hill's Prescription Diet i/d Digestive Care Dog Food – Low Fat Chicken & Vegetable Stew, and thereafter fed it to

---

[5] http://www.dvm360.com/hill-s-recall-expanded-pet-owners-demand-answers (last visited February 13, 2019).

Garfield.

33.    A few days prior to December 23, 2018, there was a drastic and unexpected change in Garfield's health. He became increasingly ill, experiencing a loss of appetite, lethargy, and vomiting, with no explanation therefore.

34.    On December 23, 2018, Plaintiff woke up to find that Garfield had unexpectedly passed away during the night despite being only 12 years old. Plaintiff took Garfield to the vet and had him cremated, incurring over $230 in bills. Plaintiff was utterly devastated by the loss of Garfield.

35.    Plaintiff reached out to Defendant's customer service department in early January, 2019, before the recall, and asked Defendant to test her Products because she believed that the Products were the cause of Garfield's death even though she did not know of the excessive vitamin D issue at the time. She was told that every batch of the Products were tested before distribution and that there was nothing that they could do.

36.    After the recall, she again asked Defendant to test her Products, but she was told that Defendant's "evaluation" of the Products for elevated vitamin D levels was over.

37.    Plaintiff would not have purchased the Products had she known that they contained elevated levels of vitamin D, or that Defendant did not adequately test or inspect the Products before selling them.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this lawsuit, both individually and on behalf of similarly situated purchasers of the Products, pursuant to Rule 23. The proposed Class is defined as follows:

> All persons in California who purchased Hill's Prescription Diet and Hill's Science Diet brand dog food with elevated levels of vitamin D at any time beginning 4 years preceding the filing of this Complaint and continuing to the present.

Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

39.     Plaintiff and Class members seek relief under Rule 23(a) and (b)(2). The injunctive relief is a significant reason for bringing this case and separately justifies the prosecution of this litigation. Plaintiff and Class members also seek relief under Rule 23(b)(3) and/or (c)(4).

40.     **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The total membership of the Class is unknown to Plaintiff at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class based on Defendant's reported revenue of $2.2. billion dollars and the hundreds of complaints posted on Facebook and other websites. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Similarly, Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

41.     **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a.     Whether Defendant owed a duty of care to Plaintiff and the Class;

b.     Whether Defendant breached that duty of care to Plaintiff and the Class;

c.     Whether Defendant knew or should have known that the Products contained a dangerously elevated amount of vitamin D;

d.     whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Products;

e.     whether Defendant wrongfully represented and continues to represent that the Products are healthy, of superior quality, nutritious, and safe for consumption;

f.     whether Defendant wrongfully represented and continues to represent that the Products are subject to rigorous testing and inspection;

g.     whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

//

h.     whether Defendant knowingly advertised goods with intent not to sell them as advertised;

i.     whether Defendant's practices are likely to deceive reasonable consumers;

j.     whether Defendant knowingly made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;

k.     whether Defendant knowingly represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve;

l.     whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Products violated the laws alleged herein;

m.     whether Defendant breached its express warranties;

n.     whether Defendant breached its implied warranties;

o.     whether Defendant made negligent misrepresentations and/or omissions;

p.     whether Plaintiff and members of the Class have sustained monetary loss and the proper measure of that loss;

q.     whether Plaintiff and members of the Class are entitled to injunctive and other equitable relief; and

r.     whether Defendant was unjustly enriched by their conduct.

42.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Defendant's practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each individual Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

43.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were comparably injured through Defendant's misconduct described above. As alleged herein, Plaintiff, like the members of the Class, purchased Products after exposure to the same material misrepresentations and/or

omissions appearing in Defendant's marketing and advertising campaign, and Plaintiff's dog at the Products and became ill. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members. Further, there are no defenses available to Defendant that are unique to Plaintiff.

44.     **Adequacy of Representation:** Plaintiff is an adequate class representative because she is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because her interests do not conflict with the interests of other Class members she seeks to represent. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and her counsel, who are experienced class action lawyers.

45.     **Superiority:** The nature of this action and the format of laws available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by the individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant; and which would establish potentially incompatible standards of conduct for Defendant; and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interest of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

//

46.     As such, the proposed Class defined herein is maintainable as classes under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and/or (b)(3), and (c)(4).

### COUNT I

### Violation of the California Consumers Legal Remedy Act

### [Cal. Civil Code §§ 1750, *et seq*.]

47.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

48.     Plaintiff and members of the Class have standing to pursue a cause of action for violation of the Consumer Legal Remedies Act ("CLRA") because they have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

49.     Plaintiff and the members of the Class are "consumers" as that term is defined by Cal. Civil Code § 1761(d).

50.     The Products marketed and sold by Defendant are "Goods" as that term is defined by Cal. Civil Code § 1761(a).

51.     Defendant is a "person" as that term is defined by Cal. Civil Code § 1761(c).

52.     The transactions described herein are "transactions" as that term is defined by Cal. Civil Code § 1761(e).

53.     Defendant's policies, acts, and practices described above were intended to induce consumers to purchase the Products.

54.     Defendant made uniform material misrepresentations and omissions regarding the nature of the Products that it knew, or should have known, were deceptive and likely to cause consumers to purchase the Products in reliance upon said representations.

55.     Defendant violated and continues to violate § 1770(a)(5) by negligently, recklessly, and/or intentionally representing the Products are nutritious, of superior quality, healthy, and safe for consumption and by failing to make any mention of the dangerous levels of vitamin D in the Products or Defendant's lack of quality control in testing and inspecting the Products.

56.     Defendant violated and continues to violate § 1770(a)(7), by negligently,

recklessly, and/or intentionally representing that the Products healthy, safe for consumption, and that they were subject to rigorous testing and inspection;

57.     Defendant violated and continues to violate § 1770(a)(9) by negligently, recklessly, and/or intentionally advertising goods with intent not to sell them as advertised.

58.     Defendant violated and continues to violate § 1770(a)(16) by representing that the Products have been supplied in accordance with previous representations when they have not.

59.     Defendant's actions described above were done with conscious disregard of the rights of Plaintiff and members of the Class.

60.     Plaintiff and members of the Class have been directly and proximately damaged by Defendant's actions described herein.

61.     Pursuant to § 1780(a), Plaintiff seeks injunctive relief in the form of an order enjoining the wrongful acts and practices of Defendant. Plaintiff will be irreparably harmed if such an order is not granted.

62.     Additionally, on February 14, 2019, Plaintiff mailed Defendant notice of its violations of Cal. Civil Code § 1770 in accordance with Cal. Civil Code § 1782. If Defendant fails to make the demanded corrections within thirty (30) days of receipt of Plaintiff's notice, Plaintiff will seek leave to amend the Complaint to claim damages under the CLRA.

63.     Plaintiff seeks the recovery of court costs and attorneys' fees pursuant to Cal. Civil Code § 1780(e).

### COUNT II

**False and Misleading Advertising**

**[Business & Professions Code §§ 17500, *et seq.*]**

64.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

65.     California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... any statement ... which is untrue or misleading and which is known, or which by the exercise of reasonable care

1  should be known, to be untrue or misleading....”

2  66.   Defendant's material misrepresentations and omissions alleged herein violate Bus.

3  & Prof. Code § 17500.

4  67.   Defendant knew or should have known that its marketing and advertising materials

5  were false, deceptive, and misleading.

6  68.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the

7  members of the Class seek an order of this Court requiring Defendant to (a) identify all potentially

8  affected Products through comprehensive testing; (b) ensure that all potentially affected Products

9  are identified on its website; and (c) ensure that all potentially affected Products are removed from

10 the stream of commerce.

11 69.   Further, Plaintiff and the members of the Class request an order awarding them

12 restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

13 70.   Additionally, Plaintiff and the Class members seek an order requiring Defendant

14 to pay actual damages and statutory treble damages and attorneys' fees.

15 <u>**COUNT III**</u>

16 **Breach of Express Warranty**

17 71.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

18 forth herein.

19 72.  Defendant marketed and sold its Products into the stream of commerce with the intent

20 that the Products would be purchased by Plaintiff and the Class.

21 73.   Defendant expressly warranted, advertised, and represented to Plaintiff and the

22 Class that:

23 a.   The Products contain "clinically proven nutrition"

24 b.   The Products are "Veterinarian Recommended"

25 c.   Defendant subjected the Products to feeding tests using AAFCO procedures"

26 that "substantiate that [the Product] provides complete and balanced nutrition

27 for maintenance of [] dogs"

28 //

-14-

**Class Action Complaint**

d.  Defendant's "quality and safety standards are so rigorous, they're modeled after human food manufacturers";

e.  Defendant has a proven commitment to quality and safety;

f.  Defendant "only accept[s] ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's."

g.  Defendant examines each ingredient "to ensure its safety."

h.  Defendant "conduct[s] annual quality systems audits for all manufacturing facilities to ensure [they] meet the high standards your pet deserves" and "final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food"; and

i.  "All finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag"

74.  Defendant made these express warranties regarding the Products' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the Products.

75.  Defendant made these warranties and representations in connection with the sale of Products to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's warranties and representations regarding the Products in deciding whether to purchase the Products.

76.  The Products do not conform to Defendant's advertisements, warranties, and representations in that they were safe for consumption, were not subjected to rigorous quality and safety tests and inspections, and contain dangerously elevated levels of vitamin D.

77.  Defendant had actual or constructive notice of this breach, as it was aware that it did not adequately subject the Products to rigorous quality and safety tests and inspections or ensure that stringent standards were met. Further, Defendant had actual notice of its breach, as it responded to many posts on its Facebook page from customers whose dogs got sick or died after consuming the Products. Additionally, Defendant implemented a voluntary recall of certain of the Products on or about January 31, 2019, acknowledging that the Products contained elevated levels

1  of vitamin D.

2      78.    There is privity between Plaintiff and the Class and Defendant because as set forth

3  above, Defendant expressly warranted to Plaintiff and the Class directly that the Products were

4  healthy, of superior quality, nutritious, and safe for consumption, and subject to rigorous quality

5  and safety testing and inspections.

6      79.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class

7  have suffered actual damages in that they have purchased Products that are worthless and that

8  they would not have purchased the Products at all had they known of the presence of dangerously

9  elevated levels vitamin D and that Defendant did not subject the Products to rigorous quality and

10  safety tests or inspections.

11      80.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief,

12  attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's

13  breach of its express warranties.

14                          **COUNT IV**

15              **Breach of Implied Warranty of Merchantability**

16      81.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

17  forth herein.

18      82.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class

19  members.

20      83.    Defendant sold goods to Plaintiff and Class members.

21      84.    At all times mentioned herein, Defendant manufactured and supplied the Products.

22      85.    At all relevant times, Defendant impliedly warranted to Plaintiff and Class

23  members that the Products were of merchantable quality, fit for their ordinary use (consumption

24  by dogs), and conformed to the promises and affirmations of fact made on Defendant's website

25  and the Products' containers and labels.

26      86.    Plaintiff and the Class members relied on Defendant's promises and affirmations

27  of fact when they purchased the Products.

28      87.    Defendant breached its implied warranties, as the Products were not fit for their

ordinary use, and did not conform to Defendant's affirmations of fact and promises as they contained dangerously elevated levels of vitamin D and were not subjected to rigorous quality and safety tests and inspections.

88.     Defendant had actual or constructive notice of this breach as it was aware that it did not adequately subject the Products to rigorous quality and safety tests or inspections. Further, Defendant had actual notice of its breach, as it responded to many posts on its Facebook page from customers whose dogs got sick or died after consuming the Products. Additionally, Defendant implemented a voluntary recall of certain of the Products, acknowledging that the Products contained elevated levels of vitamin D.

89.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered actual damages in that they have purchased worthless Products that they would not have purchased at all had they known of the presence of dangerously elevated levels of vitamin D and were not subjected to rigorous quality and safety tests and inspections or otherwise not warranted as represented.

90.     Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's breach of its implied warranties, as set forth above.

### COUNT V

### Negligent Misrepresentation

91.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

92.     Defendant had a duty to Plaintiff and the Class members to exercise reasonable and ordinary care in the marketing, distribution, and sale of the Products.

93.     Plaintiff reasonably placed their trust and reliance in Defendant's representations that the Products are healthy, safe, high quality, subject to rigorous testing and inspection, and not adulterated with dangerous levels of vitamin D.

94.     Defendant breached its duty to Plaintiff and the Class members by formulating, testing, manufacturing, advertising, marketing, distributing, and selling the Products to Plaintiff

and the Class members that do not have the qualities, characteristics, and suitability for consumption that Defendant represented.

95.    Defendant also breached its duty to Plaintiff and the Class members by failing to promptly identify and recall all affected Products.

96.    Defendant knew or should have known that the Products' ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use—consumption by dogs—and was otherwise not as warranted and represented by Defendant, as, for example, it did not rigorously test or inspect the Products to ensure the Products' quality and safety.

97.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered actual damages in that they have purchased Products that are worthless and that they would not have purchased the Products at all had they known of the presence of dangerously elevated levels vitamin D and that Defendant did not subject the Products to rigorous quality and safety tests or inspections.

## COUNT VI

### Negligence

98.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

99.    Defendant had a duty to Plaintiff and the Class members to exercise reasonable and ordinary care in the formulation, testing, manufacture, inspection, marketing, distribution, and sale of the Products.

100.    Defendant breached its duty to Plaintiff and the Class members by failing to implement adequate quality control and/or testing and inspection of the Products.

101.    Defendant also breached its duty to Plaintiff and the Class members and by failing to identify all affected Products or to promptly remove all of the affected Products from the marketplace or to take other appropriate remedial action.

102.    Defendant knew, or should have known that its Products presented an unreasonable and unacceptable risk of injury or death to pets and would result in foreseeable and

1    avoidable damage.

2        103.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class

3    members have suffered actual damages.

4                                    **COUNT VII**

5                   **Violation of the California Unfair Competition Law**

6                   **[Business and Professions Code §§ 17200, *et seq*.]**

7        104.    Plaintiff re-alleges and incorporate the foregoing paragraphs as though fully set

8    forth herein.

9        105.    Plaintiff and the Class members have standing to pursue a cause of action against

10   Defendant for unfair, unlawful, and fraudulent business acts or practices because they have

11   suffered an injury in fact and lost money as a result of Defendant's actions and/or omissions as

12   set forth herein.

13       106.    Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 because it is in

14   violation of the CLRA, FAL, Section 5 of the Federal Trade Commission Act.

15       107.    Defendant's conduct described herein is unfair under Bus. & Prof. Code § 17200

16   because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to

17   consumers, and any utility of such practices is outweighed by the harm caused to consumers,

18   including to Plaintiff, the Class, and the public.

19       108.    Defendant's conduct is also unfair because it violates California's public policy,

20   has caused substantial consumer injury, is not outweighed by benefits to consumers or

21   competition, and is not one consumers can reasonably avoid.

22       109.    Defendant knew or should have known that its advertising campaign was false,

23   deceptive, and misleading.

24       110.    The misrepresentations and omissions by Defendant of the material facts detailed

25   above constitute a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200.

26       111.    There were reasonably available alternatives to further Defendant's legitimate

27   business interests.

28       112.    Reasonable consumers had no way of knowing that Defendant was engaged in

false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered.

113.   Defendant's wrongful conduct is ongoing and part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

114.   Pursuant to Cal. Business & Professions Code § 17203, Plaintiff seeks an injunction on behalf of the general public to: (a) identify all Products that potentially have elevated levels of vitamin D through comprehensive testing; (b) ensure that all potentially affected Products are identified on Defendant's website; and (c) remove all of the potentially affected Products from the stream of commerce.

115.   Plaintiff also seeks an order requiring Defendant to make full restitution of its ill-gotten gains wrongfully obtained from Class members as permitted by Cal. Business & Professions Code § 17203.

116.   Plaintiff seeks attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT VIII

### Unjust Enrichment

117.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

118.   Plaintiff and the Class members conferred an economic benefit upon Defendant by purchasing the Products.

119.   Defendant had an appreciation or knowledge of the benefit conferred by Plaintiff and the Class members.

120.   Plaintiff and Class members would not have purchased the Products had they known that the Products contained elevated levels of vitamin D and/or were not adequately tested and inspected.

121.   Defendant accepted and retained the economic benefit conferred by Plaintiff and Class members under circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value.

122.   Plaintiff and the Class members request restitution for their purchases.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.     For and order certifying the Class defined herein under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff as Class Representative and her attorneys as Class Counsel;

B.     For a declaration that Defendant's conduct violates the statutes referenced herein;

C.     For an order requiring Defendant:

1.   To identify all Products that potentially have elevated levels of vitamin D through comprehensive testing;

2.   To ensure that all potentially affected Products are identified on its website; and

3.   To ensure that all potentially affected Products are removed from the stream of commerce;

D.     For an order an order awarding Plaintiff and Class members their actual damages, treble damages, punitive damages, and statutory damages as provided by law;

E.     For an order an order awarding Plaintiff and the Class members restitution, disgorgement, and/or any other equitable relief;

F.     For an order an order awarding Plaintiff and the Class members pre- and post-judgement interest allowed under the law;

G.     For an order an order awarding Plaintiff and the Class members reasonable attorneys' fees and costs allowed under the law; and

H.     For such other and further relief as may be just and proper.

DATED:   February 14, 2019                    **MARLIN & SALTZMAN, LLP**

By:   ___/s/ Adam M. Tamburelli___
      Stanley D. Saltzman, Esq.
      Adam M. Tamburelli, Esq.
      *Attorneys for Plaintiff and putative Class*

**Class Action Complaint**

1

## <u>JURY DEMAND</u>

2

Plaintiff demands a trial by jury on all causes of action so triable.

3

4

DATED:   February 14, 2019          **MARLIN & SALTZMAN, LLP**

5

By:   /s/ Adam M. Tamburelli

6

Stanley D. Saltzman, Esq.

Adam M. Tamburelli

7

*Attorneys for Plaintiff and putative Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Class Action Complaint**

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

*Attorneys for Plaintiff and the putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUN VIRGINIA SUN-DAMPIER**, individually and on behalf of and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HILL'S PET NUTRITION, INC.**, a Delaware corporation, and **DOES 1-10**, inclusive,<br><br>Defendants. | **CASE NO.**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PLAINTIFF RE: PROPER COUNTY FOR COMMENCEMENT AND TRIAL OF A CLAIM UNDER THE CONSUMERS LEGAL REMEDIES ACT**<br><br>[California Civil Code § 1780(d)] |

---

**Declaration of Jun Virginia Sun-Dampier Re: Proper Venue Under CLRA**

DocuSign Envelope ID: 017BCCBF-A9E2-4762-AB50-E9700516942E

I, Jun Virginia Sun-Dampier, state and declare as follows:

1.      I have personal knowledge of the matters stated herein except as to those matters stated on information and belief, which I believe to be true.

2.      If called and sworn as a witness, I could and would testify truthfully and competently to the matters stated herein.

3.      I am a named Plaintiff in the above-captioned action and submit this Declaration pursuant to California Civil Code section 1780(d).

4.      I currently reside in Newark, California, located in Alameda County, California.

5.      Alameda County is within the jurisdiction of the U.S. District Court for the Northern District of California. Accordingly, the U.S. District Court for the Norther District of California is the proper place for the trial of this action under California Civil Code section 1780(d), and this action is properly commenced in that Court.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 14 day of February, 2019, at Newark, California.


DocuSigned by:

Virginia Sun
_____
Jun Virginia Sun-Dampier

1
**Declaration of Jun Virginia Sun-Dampier Re: Proper Venue Under CLRA**